Rose, C. J.,
concurring:
I disagree with the majority’s conclusion that the district court properly excluded Dr. Lichter’s testimony, but conclude that the error is not of a magnitude requiring reversal.
We permit expert testimony to assist the jury in understanding the evidence or in determining a fact in issue. See NRS 50.275. Schwartz was required to prove that Greenspun published a false, defamatory statement of fact about him without the degree of care which an ordinary prudent person would have exercised under similar circumstances. Dr. Lichter’s content analysis study would have aided the jury in determining whether the publication of the articles in question was made without the requisite degree of care.
Dr. Lichter was prepared to testify that: (1) the total pattern of coverage indicated that in each incident where the Sun could have gone either way, it came down on the negative side in dealing with Mr. Schwartz and his enterprises; (2) the extent of criticism of Schwartz was far beyond what was in the Review-Journal; (3) though there was much more extensive coverage of Schwartz by the Sun than by the Review-Journal, the Sun used Schwartz as a source less often than the Review-Journal did; (4) the Sun extensively used highly-charged, emotive language to characterize Schwartz in negative ways; (5) the Sun used highly charged language in describing the tank; and (6) the Sun made extensive reference to prior accidents involving the tank, including one accident that never actually occurred.[1]
*1053 Based on these conclusions, Dr. Lichter was prepared to testify that the Sun’s coverage of Schwartz and his enterprises was of a negativity that transcended the normal journalistic boundaries of fairness and balance, and accordingly, fell below professional journalistic standards. From such testimony, the jury certainly could have inferred that the articles were published without the ordinary degree of care a prudent person would have exercised in a similar situation.
Additionally, though Schwartz was not required to prove constitutional malice, malice was a necessary element to prove in support of his punitive damages claim. Dr. Lichter’s testimony could certainly lead to an inference of ill will or reckless disregard towards Schwartz, and was thus relevant in proving malice. See Katz v. Enzer, 504 N.E.2d 427, 431-32 (Ohio Ct. App. 1985) (providing for the admissibility of subsequent words tending to show ill will, spite or malice on the part of the defendant so long as the evidence can be linked reasonably to the defamatory statements at issue as part of a continuing course of conduct).
Accordingly, I feel that the district court erred in excluding Dr. Lichter’s testimony. We do not, however, presume prejudice from the occurrence of error in a civil case. See Boyd v. Pernicano, 79 Nev. 356, 385 P.2d 342 (1963). In the instant case, Dr. Lichter’s testimony was relevant to only one of the necessary elements. The jury found that Schwartz had failed to establish, by a preponderance of the evidence, any of the elements required to prove defamation. Thus, I conclude that such error does not require reversal.

 Dr. Lichter, the founder and director of the Center for Media and Public Affairs, analyzed 193 articles from the Sun and the Review-Journal, of which *1053 156 were straight news stories and the remaining 37 were editorials and signed columns.