IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MEGHAN KELLY, | § | |
| | § | No. 119, 2021 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below—Court of |
| | § | Chancery of the State of |
| v. | § | Delaware |
| | § | |
| DONALD J. TRUMP, | § | C.A. No. 2020-0809-PWG |
| | § | |
| Defendant Below, Appellee. | § | |

Submitted: June 8, 2021
Decided: July 7, 2021

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

# **O R D E R**

After consideration of the opening brief and the record on appeal, it appears to the Court that:

(1)    The appellant, Meghan Kelly, challenges a decision of the Court of Chancery overruling exceptions to a Master's report that recommended dismissal of her complaint. For the reasons stated below, we affirm, *sua sponte*, the judgment of the Court of Chancery.[1]

---

[1] *See* DEL. SUPR. CT. R. 25(c) ("After filing of the appellant's opening brief, a panel of the Court by unanimous action may, *sua sponte*, enter an order or opinion affirming the judgment or order of the trial court for the reason that it is manifest on the face of the appellant's opening brief that the appeal is without merit . . . .").

(2)     In September 2020, Kelly initiated an action in the Court of Chancery against then-President Donald Trump.  In the nearly 500-paragraph operative complaint, Kelly—who identifies as Catholic, a Democrat, and a "liberal Christian"—asserted three counts against Trump.  Count I alleged that Trump "established the illusion of government sponsored or government backed religion or religious beliefs," in violation of the First Amendment, including by "creating the appearance of supporting one perceived religious group," "govern[ing] through the illusion of religious authority," and accepting "religious and political support from alleged Christians."[2]  Count II alleged that Trump burdened Kelly's free exercise of religion, in violation of the First Amendment and the Religious Freedom Restoration Act,[3] by inciting "private citizens who believe supporting [Trump] supports God" to persecute Kelly for her beliefs.[4]  Count III alleged that Trump's adoption of Executive Order 13798[5] violated the First Amendment by "granting churches the

---

[2] *Kelly v. Trump*, C.A. No. 2020-0809-PWG, Amended Complaint ¶¶ 427-29 (Del. Ch.) (filed Oct. 5, 2020) [hereinafter Am. Compl.].
[3] 42 U.S.C. § 2000bb-2000bb-4.
[4] Am. Compl., *supra* note 2, ¶ 439.
[5] *Promoting Free Speech and Religious Liberty*, Exec. Order No. 13798, 82 Fed. Reg. 21675 (May 4, 2017).  Among other provisions, Executive Order 13798 provides that the "Secretary of the Treasury shall ensure, to the extent permitted by law, that the Department of the Treasury does not take any adverse action against any individual, house of worship, or other religious organization on the basis that such individual or organization speaks or has spoken about moral or political issues from a religious perspective, where speech of similar character has, consistent with law, not ordinarily been treated as participation or intervention in a political campaign on behalf of (or in opposition to) a candidate for public office by the Department of the Treasury.  As used in this section, the term 'adverse action' means the imposition of any tax or tax penalty; the delay or denial of tax-exempt status; the disallowance of tax deductions for contributions made to entities

2

ability to donate to politicians and political groups," creating an "unholy union" between religious groups and politicians, and causing members of religious groups to persecute other members of their own group who, like Kelly, "do not align with the religious group's political interests."[6]  Kelly sought an order enjoining Trump from sponsoring religion or persecuting those with diverse religious beliefs while employed as president and a declaration that the First Amendment rights of government agents are more limited than the rights of ordinary citizens.[7]

(3)    On November 2, 2020, a Master in Chancery issued a final report recommending dismissal of the complaint as legally frivolous under 10 *Del. C.* § 8803(c).[8]  The Master determined that Kelly lacked standing to pursue the claims that she asserted because Kelly had not shown that Trump's conduct caused her an actual or concrete injury.  Specifically, the Master determined that Kelly's "contentions are too remote and vague to be actionable."[9]  The Master also concluded that Kelly lacked standing because she had not shown that it was likely

---

exempted from taxation under section 501(c)(3) of title 26, United States Code; or any other action that makes unavailable or denies any tax deduction, exemption, credit, or benefit."  *Id.* § 2.

[6] Am. Compl., *supra* note 2, ¶¶ 450, 466-67, 471.

[7] Kelly purported to serve the complaint on then-President Trump by mailing it to then-Attorney General William Barr.  We do not consider whether such mailing properly effected service, nor do we consider whether a president is subject to civil litigation in state court.

[8] *See* 10 *Del. C.* 8803(c) (permitting a court to dismiss a complaint brought by a litigant who is proceeding *in forma pauperis* if the complaint is factually or legally frivolous or malicious).  The court had previously granted Kelly's application to proceed *in forma pauperis*.

[9] *Kelly v. Trump*, 2020 WL 6392865, at *3 (Del. Ch. Nov. 2, 2020).

that the alleged injury, "including persecution and eternal harm," would be redressed if the requested relief were granted.[10]

(4)    A Vice Chancellor overruled Kelly's exceptions to the Master's report,[11] and Kelly has appealed.  On appeal, Kelly argues that the Court of Chancery erred by dismissing her claims for lack of standing.  She also asserts that she should be permitted to substitute President Joseph Biden for former President Trump as the defendant in this action.

(5)    As an initial matter, we note that it does not appear that Kelly has served Trump, President Biden, or anyone else in this appeal.  Kelly's failure to perfect service, alone, is fatal to the appeal.[12]

(6)    Also, as to Counts I and II, Kelly indicates that "Trump is no longer a Defendant in this action" and that she is not currently seeking any relief against Trump because he is no longer president.[13]  Instead, she states that she has appealed the Court of Chancery's ruling "to preserve future or additional claims, with prejudice, against Trump related to his creation of government-religion and government-religious-beliefs, as capable of repetition to defeat res judicata, against him, for additional violations of the laws, should Trump be reelected as president."[14]

---

[10] *Id.*
[11] *Kelly v. Trump*, 2021 WL 1175423 (Del. Ch. Mar. 26, 2021).
[12] *See Dixon v. Delaware Olds, Inc.*, 396 A.2d 963, 966 (Del. 1978) (holding that failure to timely perfect service was "fatal" to the appeal).
[13] Opening Brief at 2.
[14] *Id.* at 2-3.

The Court of Chancery applied well-settled standing analysis to Kelly's allegations in Count I and II regarding Trump's conduct while in office and the harm it caused her.[15] Kelly concedes that a future complaint, in the event that Trump were reelected and engaged in "additional violations of the laws," would allege that future conduct caused future harm to Kelly. *Res judicata* would not bar those new claims.[16] We therefore decline to render an advisory opinion regarding Counts I and II of the complaint.

(7) Regarding Count III, Kelly argues that she should be permitted, under Court of Chancery Rule 25, to substitute President Biden for former President Trump as the defendant in this action.[17] In essence, she asserts that President Biden has allowed Executive Order 13798 to remain in effect; she claims that the executive order violates her First Amendment rights by creating excessive entanglement

---

[15] *Kelly*, 2020 WL 6392865, at *3 (applying the requirements for standing set forth in, *e.g.*, *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110-11 (Del. 2003)). *See also Kelly*, 2021 WL 1175423, at *2 (applying the same standard for standing).

[16] *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193-95 (Del. 2009) (explaining that *res judicata* does not bar claims based on facts that were not, and could not have been, known to a plaintiff during a prior action because they arose from events that had not yet occurred at the time of the prior action).

[17] *See* DEL. CT. CH. R. 25(d)(1) ("When an officer of the State of Delaware, a county, city or other governmental agency is a party to an action in the officer's official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time but the omission to enter such an order shall not affect the substitution."). We need not opine on whether Court of Chancery Rule 25(d)(1) applies to officers of the federal government, nor, as noted *supra* note 7, on whether the president is subject to suit in the Delaware state courts.

between the government and religious organizations. Specifically, she contends that the executive order "require[s] government organizations and agents to partner with churches to pay churches to perform government business for the government, instead of government workers performing their own jobs."[18] She states that the "churches create the illusion of charity while serving business greed" and that she "believe[s] people will be damned to hell for thinking business greed is charity."[19] She asserts that, although she might be "eligible to receive federal[ly] funded assistance through churches," she "chose not to sin against God by . . . seeking such federally funded aid[] administered through religious organizations" and thereby "misleading people to hell."[20]

(8)  Kelly's claim is manifestly without merit.  Contrary to her assertion, Executive Order 13798, on its face, does not prescribe any partnership between the government and any religious organization.  Thus, even if being caused to forgo government-funded services under these circumstances were a concrete injury for purposes of standing analysis, which we need not decide, Kelly has failed to state any cognizable claim concerning Executive Order 13798.

---

[18] Opening Brief at 28-29.
[19] *Id.* at 29.
[20] *Id.* at 30.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED. The other pending motions are moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice